By the Court.—Speir, J.
Comonfort the president of the republic of Mexico, on September 7, 1857, granted to a corporation of citizens of the United States, known as the Louisiana Tehuantepec Company, the privilege of constructing a railroad across the isthmus of Tehuantepec. In March, 1866, the defendant negotiated with the Louisiana Tehuantepec Company, for the purchase of this grant, and on March 22, 1866, wrote to Mr. Louis A. Hargous, who represented the company, the following letter:
“ Dear Sir,—In relation to the Louisiana and Tehuantepec Company, I would say, if I can get a legal assignment of all the rights of said company confirmed by the government of Mexico, I will build the proposed railroad, and give three million dollars in stock of the company which may be formed for that purpose. Yours very truly,
MARSHALL O. ROBERTS.”
At this time Maximilian, who had entered Mexico by aid of the French government, was in possession of the city of Mexico, claiming to be emperor of Mexico, and was sustained there by the aid of France.
Juarez was president of the republic of Mexico, and during this period lived in different cities of Mexico.
After the defendant’s purchase, he executed a power of attorney, on April 2, 1866, to Mr. Henry Wyckoff, to proceed to Mexico and obtain the permission and sanction of the imperial government to change the name of the company, and call it the New York, Tehuantepec and Pacific Railroad and Steamship Company, and to transfer all the rights, powers, property, franchises, charters, and privileges of every name and kind of the Louisiana and Tehuantepec Railroad Company, to the *364 New York, Tehuantepec and Pacific Railroad and Steamship Company.
It appears.that the defendant, on the suggestion of Marquis de Montholon, was induced to allow the plain-' tiff to accompany Mr. Wyckoff on the mission. Accordingly, Wyckoff and the plaintiff started for Mexico on April 10, 1866, were shipwrecked a few days out from New York, and returned to New York. It was then concluded to substitute the plaintiff for Wyckoff on this mission, and on April 25, 1866, the plaintiff, at defendant's request, sailed from New York and went to Mexico. He was taken sick, and confined by illness more than six weeks at Orizaba, and reached the city of Mexico in June, 1866. He remained in the city of Mexico about four months, and returned to New York about November 16, 1886, and delivered into the defendant’s hands the following, as the result of his mission:
“Maximilian, Emperor of Mexico, having heard our council of ministers, we decree—Permission is given to the Louisiana Tehuantepec Company, privileged for the opening of an inter oceanic communication by the isthmus of this name, by the decree of September 7, 1857, and conformably with Article 23 of the same decree, that it may transfer the residence of its directorship from New Orleans to New York, and change its name to that of New York and Tehuantepec Railroad and Steamship Company.
“ Given at Mexico on the 12th of October, 1866.
(Signed) MAXIMILIAN.”
On October 15, 1866, Juarez, the president .of the republic, declared the privilege theretofore granted to the Louisiana and Tehuantepec Company, for the reasons in his declarations stated, lapsed and insubsistent; and gave to anew company,to wit, the Tehuantepec Transit Company, the privilege which had theretofore been held by the Louisiana Tehuantepec Company. *365 So that in three days after the imperial sanction had been obtained by the plaintiff, a decree was issued by the president of the republic of Mexico, declaring that the privilege granted by the Louisiana Tehuantepec Company had lapsed. When the plaintiff first arrived in New York from Mexico, the repudiation of this grant by Juarez, and the new grant which had been made to Messrs. La Reintrie & Knapp, were known to both plaintiff and defendant.
It was conceded by both sides on the trial, at its close, that the defendant was to pay the sum of two thousand dollars towards the plaintiff's expenses, and the jury by their verdict acted upon that understanding, by allowing the offset of one thousand dollars, admittedly borrowed of the defendant. This question, then, involving the moneyed transaction between the parties, may be considered at rest.
It may be assumed, I think, that the foregoing is a fair statement of the history and circumstances under which the parties entered upon this enterprise; and which seemed to me to be necessary to a proper understanding of the many opposing views and opinions on the evidence and law, which have arisen on the trial.
A contract of some kind plainly existed between the plaintiff and defendant. The question is,—What was that contract, both as to compensation, the services required to be performed, and the performance?
The plaintiff contends that Mr. Wyckoff, who was "rst employed by the defendant to perform the serices required on this mission, and in whose place he plaintiff was substituted, acted for the defendant, nd with his approval, in arranging the terms of the greement. Accordingly, it was agreed, at Mr. Wyckff’s suggestion, that the plaintiff should write a note him setting forth those terms. The following is the ote :
*366 “My Dear Mr. Wyckoee,—Will you please to say to Mr. Roberts that I accept the offer made by you, for an amount of New York and Tehuantepec stock that will produce fifty thousand dollars, tor which consideration I agree to go to Mexico and co-operate with you in obtaining the imperial sanction to the proposed company.
“Furthermore, I desire that Mr. Roberts will associate me with you as his representative in accomplishing the proposed object.
“Finally, please arrange with Mr. Roberts, in accordance with all usage, that a liberal sum may be appropriated for our just expenses, to and from Mexico.”
The plaintiff claims that Mr. Wyckoff or the defendant handed to him a paper, of which the following is a copy (the original having been stolen from the plaintiff):
“New York, April 10, 1866.
“ My Dear Sir,—I approve of the proposition made to you by Mr. Wyckoff, guaranteeing you fifty thous- and dollars in stock of the projected New York and Tehuantepec Railroad and Steamship Company, in consideration of you assisting him in obtaining the sanction of the imperial government to the said organization. I am happy to associate you with Mr. Wyckoff in the business he has undertaken, and hope that your joint efforts will be successful, both for my sake and that of his Mexican majesty.
“I concur, when the matter is complete.
“MARSHALL O. ROBERTS.”
It is not denied that the first of the two preceding j letters was written by Mr. Wyckoff for the plaintiff to j copy, to be addressed to the former, and it is proven by both to contain the berms of the contract. The defendant evidently had knowledge of this letter, and the I purpose for which it was written. He says in his letter I to the plaintiff, “Mr. Wyckoff made the arrangement *367 for you and again, “ Mr. Wyckoff, being acquainted with the whole subject, drew up the paper in your behalf, and can be applied to, if I misstate the facts.” This is the only paper in the case proven to have been drawn up by Mr. Wyckoff, containing terms of the agreement.
The other letter, dated April 10, 1866, purporting to have been signed by the defendent, is claimed by him to be a forgery. He states positively under oath that he did not sign it, that he never authorized it, and that his signature is a forgery. Evidence was given on the point on both sides, and being contradictory, the court left the question to the jury.
The first letter is not questioned by either party, and being recognized by the defendant, contains of itself, I think, a valid agreement. It was written, and in the plaintiff’s possession, before he left for Mexico, and after the defendant had made his contract of March 33, 1866, with Mr. Hargous, the terms of which were, “if I can get a legal assignment of all the rights of said company confirmed by the government of Mexico, I will give three million dollars in stock of the company which may be formed for that purpose.” On the part of the plaintiff the terms were, “he agreed to go to Mexico, and co-operate with Wyckoff in obtaining the imperial sanction to the proposed company.” On the part of the defendant, the. consideration was the payment of an amount of the Hew York and Tehuantepec stock, that will produce fifty thousand dollars. The engagement of the defendant was unconditional to deliver a certain amount of stock, &c. On April 35, 1866, the day the plaintiff sailed, he received from the defendant a letter, to the effect that he was happy that he had consented to leave for Mexico by the steamer, that the purchase of the grant for a railroad over the Isth mus of Tehuantepec had been completed, and he would send him papers at the earliest moment. The letter claimed *368 to be a forgery does not materially change the terms of the engagement. It approves the proposition made to Mr. Wyckoff by the plaintiff, guaranteeing fifty thousand dollars in stock of the projected company. In one respect it is more unfavorable to the plaintiff :• “I concur when the matter is complete.” That is, when, the imperial sanction to the proposed company has been obtained, I will complete my engagement, not before.
A power of attorney executed by the defendant, and. dated May 9, 1866, reached him about the time of his. arrival in Mexico. This, most likely, is one of the-papers the defendant had promised, when the plaintiff' sailed, “ to send to him at the earliest moment.” This power of attorney is in terms the same as the defendant had more than a month before its date executed to Wyckoff, when preparing to go upon the same mission. And it nowhere appears, as far as I can see, that the plaintiff had ever seen that power, or knew of the terms of the present one before reaching the ground of' his operations. It is very difficult to understand why he should have been kept in ignorance of so valuable and serviceable a, document, purporting to contain his instructions. Perhaps one versed in the dexterity and skill of diplomacy might furnish a satisfactory reason„
The defendant on July 26, 1866, wrote to the plaintiff, calling his attention to the powc.r he had sent him,, which authorized him to apply to the “imperial government, for their consent to change the name of the grant to the New'York and Tehuantepec Railroad and Steamship Company.” Although the letter speaks, of the power, it is pointed to the changing of the name of the company. That was done by the decree of Maximilian.
This power of attorney which the plaintiff received in Mexico, gave broader powers than those contained in the contract entered into before the plaintiff left New *369 York. It contained the additional authority, “to transfer the rights and powers, property, franchises, and charters of every name and nature of the said Louisiana and Tehuantepec Company, unto the new company.”
The defendant now claims, that the plaintiff knew of this additional authority, and acted upon it in his negotiations with the imperial government; that a fair construction of the evidence on that point is, that the power contained all that he was required to do. That being so, he failed entirely to perform what was required of him, as shown by the decree he obtained; that the power contained the basis of the contract between the parties, and was so treated by them ; that the contract being upon the contingency, that the privilege and franchises of the old company should be transferred to the new company, before the defendant became liable to pay either in money or stock; that those franchises and privileges being revoked, the company could not issue stock to the plaintiff or anybody else.
On this point, then, the parties were at issue as to what the evidence proved as matter of fact. By the defendant’s theory, when the plaintiff found the power in Mexico clearly defining what was required of him to do, and he acted upon it, the agreement he had made before he sailed, was modified by his own voluntary act, and it can not be said he accomplished his mission.
I think that the court properly decided, that if this were true, it did not deprive the plaintiff of a suitable and proper compensation for his services. This, of course, is put upon the ground that he had performed his part of a valid contract before the defendant had imposed new and other duties by his letter of July 26, and the power. The question for the jury to answer in such a conflict of testimony was, whether the defendant, *370 after the return of the plaintiff from Mexico, accepted the plaintiff’s mission as a performance of the plaintiff’s part of the agreement. This course was clearly justified by the pleadings. The complaint counted upon a quantum meruit, and the defendant, in his answer, does not deny that the plaintiff failed to perform, but that the defendant was unable to perform on his part. The jury having affirmatively answered the question submitted, and returning a general verdict for the plaintiff, it remains to look into some of the objections and exceptions taken on the trial, to see if the verdict can be sustained.
On the trial, after the plaintiff had stated that he had landed at Vera Cruz in the beginning of May, and went from there to Orizaba, where he fell sick and stayed six weeks, he was asked, “ What expenses-were you put to by your illness there ? ”
The question was objected to as irrelevant, immaterial, and incompetent. The court overruled the objection, and the defendant excepted. The witness then stated that he had two doctors most of the time, and one accompanied him to Mexico, and his expenses were something like six or seven hundred dollars in gold.
I am of the opinion that this testimony was clearly inadmissible. Under any aspect of the case was it proper ? No obligation whatever obliged the defendant to pay the expenses of the plaintiff’s sickness at Orizaba. And the answer was calculated to awaken the sympathies and arouse the prejudices of the jury Plaintiff’s counsel contend that the error was cured by the court directing the jury to disregard this testimony, and ordered it to be stricken out. But the testimony was given at the commencement of the trial, which lasted three or four days, and the order to disregard it and strike out was at the close, when the judge charged.
*371 The evidence had already had its effect upon the jury, and we can not say their judgments were not influenced. The cases of Anderson v. The Rome, W. and O. R. R. Co. (54 N. Y. 334), and Erbon v. Lorrillard (19 N. Y. 392), are clearly against the admission of this testimony.
I think, also, there was error in allowing the jury to take into consideration the subject of entertainments given by the plaintiff to Maximilian, to his cabinet, and to the empress. It is difficult to see how it was possible for the jury to consider those entertainments and disbursements in arriving at a verdict, when there were no items properly before them ; no proof whatever of what they consisted or their value. I am of the opinion a new trial should be granted, with costs to abide the event.